UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| First Class Moving Systems, Inc., | Case No. 8:25-bk-2243-RCT |
| | *Jointly Administered with* |
| Capital Asset Finance, Inc., | Case No. 8:25-bk-2244-RCT |
| First Class Moving Systems of North Jersey, Inc., | Case No. 8:25-bk-2245-RCT |
| First Class Moving of South Florida, Inc., | Case No. 8:25-bk-2246-RCT |
| First Class Commercial Services of Orlando, Inc., | Case No. 8:25-bk-2247-RCT |
| FC Equipment Leasing, Inc., | Case No. 8:25-bk-2248-RCT |
| | |
| Debtors. | |

_____/

| | |
|---|---|
| First Class Moving Systems, Inc., | Adv. No. _____ |
| Capital Asset Finance, Inc., | |
| First Class Moving Systems of North Jersey, Inc., | |
| First Class Moving of South Florida, Inc., | |
| First Class Commercial Services of Orlando, Inc., | |
| FC Equipment Leasing, Inc., | |
| | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| Simonik Moving & Storage, Inc., | |
| a New Jersey Corporation | |
| | |
| Defendant. | |

_____/

## MOTION FOR PRELIMINARY INJUNCTION WITH
## SUPPORTING MEMORANDUM OF LAW AND REQUEST FOR HEARING

FIRST CLASS MOVING SYSTEMS, INC. ("**First Class**"), CAPITAL ASSET

FINANCE, INC. ("**Capital Asset**"), FIRST CLASS MOVING SYSTEMS OF NORTH JERSEY,

INC. ("**FC NJ**"), FIRST CLASS MOVING OF SOUTH FLORIDA, INC. ("**FC SFL**"), FIRST

CLASS COMMERCIAL SERVICES OF ORLANDO, INC. ("**FC Orlando**"), and FC

EQUIPMENT LEASING, INC. ("**FC Equipment**") (collectively, the "**Debtors**") seek a preliminary injunction during the pendency of these Chapter 11 cases against Simonik Moving & Storage, Inc., (the "**Defendant**") enjoining the Defendant's prosecution against William Fallon ("**Mr. Fallon**") and Christopher Hunt ("**Mr. Hunt**") of the action styled *Simonik Moving & Storage, Inc. v. William Fallon and Christopher Hunt,* Docket No. SOL-L-000781-25, pending in the Superior Court of New Jersey in and for Somerset County (the "**NJ State Court Action**"). In support of this motion, the Debtors state the following:

### Jurisdiction

1.      After notice to the Defendant and a hearing to be held before this Court, the Debtors request a preliminary injunction pursuant to 11 U.S.C. § 105(a) and Fed.R.Bankr.P. 7065 based upon the facts set forth in the *Verified Complaint for Injunctive Relief* (Adv. Doc. No. _) (the "**Complaint**") filed contemporaneously with this motion and the legal authorities set forth in the accompanying Memorandum of Law.

2.      As more particularly set forth in the Complaint and the Memorandum of Law set forth below, the Debtors submit that this Court should enter a preliminary injunction during the pendency of these Chapter 11 cases enjoining the Defendant's prosecution against Messrs. Fallon and Hunt of the NJ State Court Action.

3.      The Debtors seek a preliminary injunction through the restructuring process pursuant to a confirmed plan.  The injunction is proper because (1) the Debtors have a substantial likelihood of prevailing on the merits; (2) the Debtors will suffer irreparable harm unless the preliminary injunction is issued; (3) the injury to the Debtors outweighs any damage the injunction may cause to the Defendant; and (4) the public interest would not be adversely affected if this Court issues a preliminary injunction.

4901-3900-5770, v. 3

WHEREFORE, the Debtors respectfully request that the Court issue a preliminary injunction enjoining Defendant's prosecution against Messrs. Fallon and Hunt of the NJ State Court Action during the pendency of these Chapter 11 cases through the restructuring process pursuant to a confirmed plan, and provide such other and further relief as may be just and proper.

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

The Debtors file this Memorandum of Law in support of their motion for entry of a preliminary injunction.

### Argument and Citations of Authority

#### Jurisdiction and Venue

Under 28 U.S.C. §§ 157 and 1334, bankruptcy courts have nonexclusive jurisdiction over proceedings "related to" a case under the Bankruptcy Code.  The test articulated by the Eleventh Circuit for determining whether a civil proceeding is related to bankruptcy is "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Boone*, 52 F.3d 958, 960 (11th Cir. 1995) (citations omitted) (emphasis added). Because the outcome of the State Court Action could "conceivably have an effect on" the Debtors' estates, the action is "related to" the bankruptcy cases, and this Court has jurisdiction over this adversary proceeding.

#### Bankruptcy Court's § 105(a) Powers

Bankruptcy courts have the same injunctive powers as courts of equity.  S. Rep. No. 989, 95th Cong., 2d Sess. 51 (1978).  The statutory predicate for a bankruptcy court to issue a stay is § 105(a) of the Bankruptcy Code. *Id.*  Under § 105(a)*,* bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  This language includes issuing permanent injunctions, preliminary injunctions, and

3

temporary restraining orders.  *See In re Kasual Kreation, Inc.*, 54 B.R. 915 (Bankr. M.D. Fla. 1985).

The jurisdictional test is whether failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through a third party.  *Lahman Mfg. Co. v. First Nat'l Bank of Aberdeen (In re Lahman Mfg. Co.),* 33 B.R. 681 (Bankr. D.S.D. 1983).  The case law is replete with instances where § 105(a) has been used to enjoin court proceedings against non-debtor parties that would affect the debtor's bankruptcy case.  *Kasual Kreation*, 54 B.R. at 915.  *See also*, *GAF Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 26 B.R. 405 (Bankr. S.D.N.Y. l983); *Otero Mills, Inc. v. Security Bank & Trust, (In re Otero Mills, Inc.)*, 21 B.R. 777 (Bankr. D.N.M. 1982).  Indeed, this Court has enjoined such proceedings.

Based upon the aforementioned cases and § 105(a)'s express language, the Court has the power to enjoin parties from proceeding in other courts against parties other than the Debtors when failing to enjoin the parties would harm the Debtors' bankruptcy cases.

<u>Standard for Preliminary Injunction</u>

It is well established that a preliminary injunction is an extraordinary and drastic remedy that may be granted only upon a clear and convincing showing that the movant has carried its burden on each element under Rule 7065 of the Bankruptcy Rules.  *In re Stephen P. Nelson, D.C., P.A.*, 140 B.R. 814, 816 (Bankr. M.D. Fla. 1992) (citing *In re Costa & Head Land Co.*, 68 B.R. 296, 304 (Bankr. N.D. Ala. 1986)).  To obtain the relief sought, the movant must show with the requisite degree of proof: (1) that the movant has a substantial likelihood of succeeding on the merits; (2) that the movant will suffer irreparable injury unless an injunction issues; (3) that the threatened injury to the movant outweighs any damage the injunction may cause the opposing

4

party; and (4) that the injunction would not adversely affect the public interest. *Id.* (citing *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985); *Calaway v. Block*, 763 F.2d 1283, 1287 (11th Cir. 1985)); *In re Olympia Holding Corp.*, 161 B.R. 524, 528 (Bankr. M.D. Fla. 1993). These elements are to be balanced and are not to be treated as prerequisites. *American Imaging Services, Inc. v. Eagle Pricher Indus., Inc.* (*In re Eagle-Pricher Indus., Inc.*), 963 F.2d 855, 859 (6th Cir. 1992). Consequently, a court may issue an injunction upon the overwhelming presence of one of the factors despite a weak showing on the others. *Id.* at 860.

<u>Chapter 11 Co-debtor Stays</u>

The automatic stay provisions of § 362(a) generally are not available to third-party non-debtors. *See, e.g.*, *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509-10 (3d Cir. 1997) (explaining that it is "universally acknowledged that an automatic stay of proceedings accorded by § 362(a) may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor") (citations omitted). It is equally well settled, however, that § 105(a) provides the bankruptcy courts with the authority to enjoin proceedings against non-debtors that would materially affect a debtor's effort to reorganize. *Nelson*, 140 B.R. at 816 (citing, *e.g.*, *In re Am. Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989). *See also*, *McCartney*, 106 F.3d at 509-510; *In re Sunbeam Securities*, 261 B.R. 534, 536 (S.D. Fla. 2001). Although a stay of litigation against a non-debtor guarantor is the exception and not the rule, bankruptcy courts have found "unusual circumstances" necessary to justify a preliminary injunction staying litigation against a non-debtor guarantor in essentially three fact patterns. *McCartney*, 106 F.3d at 509-510.

Initially, courts have found "unusual circumstances" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant, and, therefore, a judgment against the third-party defendant will, in effect, be a judgment or finding

4901-3900-5770, v. 3

against the debtor." *Id.* (citing *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)) (relying on both the automatic stay provisions and the bankruptcy court's equitable powers under § 105(a) to enjoin actions against non-debtor codefendants in the Dalkon Shield products liability litigation because of the potential impact on the estate and the availability of the insurance proceeds to satisfy the claims); *see also, In re Am. Film Techs., Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (staying prosecution of wrongful discharge claims against former and present directors of a debtor corporation because of the debtor's indemnification obligations and its possible exposure to collateral estoppel prejudice).

Bankruptcy courts have also enjoined actions against non-debtor parties where the non-debtor's assets were to be used as a source to fund the plan or when preserving the credit standing of the non-debtor party and his ability to borrow played a significant and meaningful role in the debtor's attempt to achieve reorganization. *In re Regency Realty Associates*, 179 B.R. 717, 719 (Bankr. M.D. Fla. 1995) (recognizing "classic scenarios" for issuance of § 105(a) injunction to protect a non-debtor guarantor when guarantor willing to contribute his credit, funds or properties to fund plan of reorganization); *In re St. Petersburg Hotel Assocs., Ltd.*, 37 B.R. 380 (Bankr. M.D. Fla. 1984) (same); *see also, In re Lazarus Burman Assocs.*, 161 B.R. 891, 899-900 (Bankr. E.D. N.Y. 1993) (enjoining guaranty actions because principals were the only persons who could effectively formulate, fund, and carry out debtors' plans of reorganizations).

Bankruptcy courts have also exercised their discretion to stay actions against a debtor's principal when the principal is a "key person" and should be temporarily protected against lawsuits to devote his full time and energy to the affairs of the debtor, especially in the initial stage of the case. *See, e.g.*, *Nelson*, 140 B.R. at 817 (enjoining actions against the non-debtor guarantor of a debtor corporation's obligations where the guarantor was president of the debtor and the

6

president's services and expertise were essential to the debtor's reorganization); *In re Johns-Manville Corp.*, 33 B.R. 254 (Bankr. S.D.N.Y. 1983) (enjoining all entities and their counsel from commencing, continuing or taking any action of any type against present, former or future officers, directors, or employees); *In re Ionsphere Clubs, Inc.*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (enjoining a District Court action against the chairman of the debtors' board of directors because allowing action against him to proceed would result in substantial time being distracted from the reorganization process); *Kasual Kreation*, 54 B.R. at 917 (court enjoined creditor's action against debtor's principals at a time when their efforts were "essential to the operation of the debtor's business and reorganization"); *In re Ms. Kipps, Inc.*, 34 B.R. 91 (Bankr. S.D.N.Y. 1983) (enjoining action in state court by a labor union against the debtor's president).

*A § 105(a) Non-debtor Stay is Warranted in this Case*

The Debtors respectfully submit that they can sustain their burden of proof on all necessary elements for a § 105(a) injunction. The Debtors would also submit that "unusual circumstances" exist in this case justifying a § 105(a) non-debtor stay.

## The Debtors' Businesses

1.      Founded in 2001 by Messrs. Fallon and Hunt, the Debtors provide: (i) residential moving, packing, and storage services to clients for local, long distance, international, and military moves; (ii) office and industrial moving, packing, and storage services for corporate relocations, healthcare laboratories, warehouse facilities, and decommissioning and liquidation moves; and (iii) logistics management services for moving, warehousing, and distribution of furniture, fixtures, and equipment and operating supplies and equipment in connection with facility openings, expansions, and renovations.

2.      In November of 2022, First Class purchased the Defendant's moving and storage business.

3.      In connection with the acquisition, FC NJ executed a promissory Note (the "**Note**") in the principal amount of $415,849.75 with 5% interest and monthly payments of $7,847.60.

4.      Messrs. Fallon and Hunt each executed a Continuing and Unconditional Guaranty (each a "**Guaranty**"), jointly and severally guaranteeing payment of the Note.

### The Chapter 11 Cases

5.      On April 11, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

6.      The Debtors filed the Chapter 11 cases to streamline operations, right size the companies, restructure their balance sheets, while preserving jobs and continuing to deliver the same five-star service that their clients have come to expect.

7.      Messrs. Fallon and Hunt are absolutely essential to the Debtors' operations and reorganization. Each of them work more than 40 hours per week managing the Debtors' operations and directing the reorganization effort as chief executives. Their responsibilities include, without limitation:

#### Operational Oversight
- Monitor and manage the execution of daily moving and storage operations.
- Review and respond to reports from dispatch, warehouse, and logistics teams.
- Ensure efficiency and quality of local, interstate, international, and military moves.
- Address high-level issues that arise with crews, vehicles, or schedules.

#### Team Leadership & Management
- Supervise and meet with department heads (operations, sales, customer service, compliance, HR).
- Conduct daily check-ins or briefings to align teams and address challenges.
- Lead hiring decisions for key roles and ensure proper training programs are in place.
- Foster a strong company culture, especially among drivers, movers, and warehouse staff.

4901-3900-5770, v. 3

**Customer & Client Relations**
- Engage with key clients, particularly corporate or military accounts, to ensure satisfaction and retention.
- Resolve escalated customer service issues.
- Review customer feedback and work with teams to improve service quality.

**Compliance & Risk Management**
- Ensure the company adheres to FMCSA, DOT, military (e.g., DP3), and international shipping regulations.
- Oversee insurance claims and legal matters related to damages or contracts.
- Regularly review safety protocols and fleet compliance (e.g., maintenance logs, driver logs).

**Financial Oversight**
- Monitor daily revenue, job costs, margins, and expense reports.
- Approve significant expenditures or purchases (equipment, vehicle repairs, marketing campaigns).
- Review invoices, payroll, and ensure billing accuracy for various types of moves.

**Sales & Business Development**
- Oversee sales strategies across service lines (residential, corporate, military, international).
- Track lead generation, conversion rates, and pipeline health.
- Build relationships with referral partners (realtors, relocation companies, military contacts, etc.).
- Attend industry events, government contracting briefings, or networking meetings as needed.

**Strategic Planning**
- Identify growth opportunities (e.g., new service areas, storage facility expansion, military contract bids).
- Analyze competitor activity and industry trends to inform decisions.
- Work on long-term goals, such as process improvement, technology upgrades, or fleet expansion.

**Quality Control**
- Review KPIs like damage claims, on-time performance, and customer satisfaction scores.
- Implement process improvements to address service issues or inefficiencies.
- Conduct spot audits of jobs, warehouse activity, or client follow-up calls.

8.     Messrs. Fallon and Hunt have committed to provide additional support for the

Debtors' reorganization effort by providing a debtor in possession financing facility.

4901-3900-5770, v. 3

**The NJ State Court Action**

9.      On or about May 27, 2025, the Defendant filed the NJ State Court Action asserting three separate causes of action (breach of guaranty, unjust enrichment, and promissory estoppel) and seeking a money judgment against Messrs. Fallon and Hunt in the amount of $234,644.84, plus default interest at the rate of 16% per annum.

10.     Messrs. Fallon and Hunt were served with process on June 2, 2025.  Therefore, the deadline to file a responsive pleading has not run.

Substantial Likelihood on the Merits

11.     In the context of a bankruptcy case, courts ruling on a preliminary injunction define a "substantial likelihood of success" as the probability of a successful reorganization. *Nelson*, 140 B.R. at 816–17; *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *In re Gathering Rest., Inc.*, 79 B.R. 992, 998 (Bankr. N.D. Ind. 1986). Here, there is a substantial likelihood that the Debtors will be able to reorganize.

12.     The Debtors have engaged in aggressive right-sizing activities to improve profitability and cash flow.

13.     The Debtors are working efficiently toward filing a plan of reorganization, which will devote the Debtors' projected revenue to the payment of creditor claims in accordance with the Bankruptcy Code's priority scheme.

14.     Messrs. Fallon and Hunt have committed to provide additional support for the Debtors' reorganization effort by providing a debtor in possession financing facility.

15.     Mr. Fallon's and Mr. Hunt's contacts, services, and resources are essential to the Debtors' reorganization effort.

16.     The Debtors cannot afford for Messrs. Fallon and Hunt to be distracted by the NJ State Court Action during this critical point in the reorganization process.

4901-3900-5770, v. 3

17.     Messrs. Fallon and Hunt have finite resources, which can either be devoted to the reorganization effort or utilized to defend the NJ State Court Action.

18.     The Debtors have a substantial likelihood of success on the merits in these Chapter 11 cases, but only with the support of Messrs. Fallon and Hunt.

Irreparable Harm

19.     In this case, there are "unusual circumstances" giving rise to irreparable harm.

20.     Allowing the NJ State Court Action to proceed against Messrs. Fallon and Hunt will jeopardize the Debtors' ability to reorganize.  Specifically,

    a.  Requiring Messrs. Fallon and Hunt to defend the NJ State Court Action will divert their time and attention, adversely impacting their ability to focus on the Debtors' operations, right-sizing efforts, and reorganization.

    b.  Messrs. Fallon and Hunt have finite resources and have committed to provide additional support for the reorganization effort. Requiring them to defend the NJ State Court Action will erode the resources available to support the Debtors' reorganization effort.

21.     In addition, a judgment against Messrs. Fallon and Hunt will give rise to indemnification claims by them against the estates.

22.     Allowing the Defendant to obtain and collect on judgments will prejudice the rights of all the Debtors' creditors.

Balance of Prejudice

23.     In contrast to the irreparable harm set forth above, the Defendant will suffer little, if any, prejudice from a stay of the NJ State Court Action pending confirmation of a plan.

24.     The only harm that might befall the Defendant is a brief delay in the prosecution of the NJ State Court Action.

11

<u>Public Interest</u>

25.     The public interest will not be harmed if the Court temporarily stays the NJ State Court Action pending confirmation of a plan.

26.     The granting of the injunctive relief sought herein unequivocally advances a significant public interest, that is, in confirming a plan as contemplated by the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.; and in assuring that the legitimate rights of the customers, creditors, employees and other parties in interest are protected.

**<u>Relief Requested</u>**

For the reasons set forth herein, the Debtors respectfully request that the Court issue a preliminary injunction: (i) enjoining the Defendant from commencing or continuing any collection efforts or legal actions against Messrs. Fallon and Hunt for the duration of the Debtors' bankruptcy cases, up to and including the entry of a final order confirming the Debtors' plan, including, without limitation, enjoining the Defendant's prosecution of the NJ State Court Action; and (ii) providing such other and further relief as may be just and proper.

*/s/ Amy Denton Mayer*
Amy Denton Mayer (FBN 0634506)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: amayer@srbp.com
Attorneys for the Debtors

4901-3900-5770, v. 3

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing *Motion for Preliminary*

*Injunction with Supporting Memorandum of Law* has been furnished on this 12th day of June, 2025,

by U.S. mail to:

Simonik Moving & Storage, Inc
c/o Richard W. Riley
Daniel R. Guadalupe
Pashman Stein Walder Hayden, P.C.
824 North Market Street, Suite 800
Wilmington, DE 19801

*/s/ Amy Denton Mayer*
Amy Denton Mayer

4901-3900-5770, v. 3